RUSSELL T. MONAHAN USB# 9016
COOK & MONAHAN, P.C.
Attorneys for Plaintiff
323 South 600 East, Suite 200
Salt Lake City, Utah 84102
Telephone:  (801) 595-8600-
Telefax:  (801) 595-8614
E-Mail:  russ@cooklawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FARIDA SAMAROU,<br><br>      Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC.,<br><br>      Defendant. | **COMPLAINT**<br>Jury Trial<br><br><br>Civil No: 2:23-cv-335<br><br>Judge: |

### GENERAL ALLEGATIONS

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et. seq., as amended, for employment discrimination.  Jurisdiction is specifically conferred upon this Court under, and by virtue of, 42 U.S.C. §2000e(5).

2.      The Plaintiff is a resident of Salt Lake County, Utah.

3.      The Defendant is a for-profit corporation with its principal place of business at 702 SW 8th Street, Bentonville, AR 72716, with multiple retail locations within the state of Utah.

4.      Venue is proper in the Central Division under 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred in such district.

5.      On February 27, 2023, the United States Equal Employment Opportunity Commission issued a Determination and Notice of Rights authorizing the Plaintiff to initiate proceedings in an appropriate Court of competent jurisdiction.  A copy of said notice is attached hereto as Exhibit A, and is incorporated by reference herein.

6.      At all times herein material, the Plaintiff was a member of a protected class under Title VII.

7.      At all times herein material, the Defendant was an employer within the meaning of Title VII.

8.      The Defendant initially employed the Plaintiff as pharmacy technician in April 2005.

9.      In June 2011, Plaintiff graduated from pharmacy school along with four other white classmates who had also been working for Walmart.

10.     The four other classmates consisted of three white males and one white female: Nathan Blackham, Cameron Clark, Stephen Simister, and Joani Lovell.

11.     Plaintiff is a black female from Togo in West Africa.

2

12.     Plaintiff was regularly in contact with Tim Rombach, the market manager for Salt Lake, a white male when Plaintiff was in pharmacy school letting him know that Plaintiff wanted a full time permanent job with Walmart.

13.     Plaintiff had been working for Walmart pharmacy longer than her white counterparts mentioned above.

14.     Plaintiff had more pharmacy experience than all four of her white counterparts.

15.     Plaintiff and her white counterparts all received their Utah pharmacist licenses at the same time in late-June/mid-July 2011.

16.     Tim Rombach immediately gave Nathan Blackham and Joani Lovell full time permanent salaried pharmacist positions at store 3232 in West Jordan and store 5120 in South Jordan respectively in his market in Salt Lake areas.

17.     Tim Rombach placed Stephen Simister full time at store 5350 in Murray; then Stephen Simister became a salaried pharmacy manager there a few months later.

18.     Cameron Clark received a full time job at the University of Utah healthcare in Salt Lake but Tim Rombach kept him in Walmart system at store 3232.

19.     Cameron Clark would pick up shifts at Walmart when available while working full time at the University of Utah Healthcare.

20.     Plaintiff was given a position as a part time floater.  Plaintiff was the only one of the five to remain as a floater.

21.     Plaintiff continued to contact Tim Rombach asking him for a permanent full-time position.

22.    In response to the Plaintiff's requests for a full time permanent position, Tim Rombach transferred Plaintiff out of his market into Heidi Ulrich's market.

23.    Heidi Ulrich, a white female and the market manager for Northern Utah, gave Chad Smith, Plaintiff's former pharmacy manager from store 1686, an opportunity to bring on a pharmacist of his choosing to a full-time permanent position.

24.    Chad Smith selected Plaintiff to become his staff pharmacist.

25.    Although the placement into a staff pharmacist position normally required an offer letter and a move from hourly to salary, Plaintiff was denied these benefits.

26.    Plaintiff then initiated her first complaints to the Defendant about the discriminatory treatment directed at her in October 2011.

27.    After Plaintiff complained to the Defendant, Heidi Ulrich promised Plaintiff a salaried position in a different store once it opened.

28.    The new store opened on Parley's Way in Salt Lake in 2012, however Plaintiff was never given a position within the store.

29.    Over the next several years, Plaintiff was continually denied a full time permanent position with the Defendant along with other acts of discrimination.

30.    In January 2015, Plaintiff was employed at store 5235, working 80 hours every two weeks.

31.    At one point Plaintiff informed Tim Rombach about not having enough hours to complete the tasks assigned to Plaintiff.

32.    Because of turnover at the 5235 store, Plaintiff was required to perform both pharmacist and technician tasks. and my own pharmacist tasks.

33.    Tim Rombach responded by saying that the pharmacy manager, Alicia Gardiner told him everything was fine at store 5235.

34.    However, we were losing one to two technicians per month, patients were getting the wrong medications, we were also having diversion issues where narcotics were being stolen.

35.    Stephen Simister, replaced Alicia Gardiner as the pharmacy manager at store 5235 shortly after Plaintiff complained.

36.    Because of the Defendant's lack of support and refusal to provide the Plaintiff with a permanent salaried position, Plaintiff began seeking employment with other pharmacies.

37.    Plaintiff was also pregnant at this time and put in for maternity leave starting with the anticipated birth in April.

38.    On or about February 11, 2015, Stephen Simister came to the pharmacy on his day off.

39.    Stephen Simister pulled Plaintiff to the counsel area and started yelling at Plaintiff in front of the customers, the technicians, and the other pharmacist because the Salt Lake City Veterans Affairs Medical Center had asked for an employment reference for Plaintiff.

40.    Stephen Simister also chastised the Plaintiff for not requesting maternity leave for several months prior to the Plaintiff's April due date.

41.    While Plaintiff was waiting for her maternity leave to commence, her hours were reduced from 80 hours every 2 weeks to 56 hours every two weeks.

42.     Plaintiff also learned that the Defendant filled a salaried permanent pharmacist position at store 5235 without posting the position and thereby denying the Plaintiff the ability to apply for the position.

43.     On May 4, 2015, while Plaintiff was on maternity leave, Plaintiff emailed Samantha Ficklin the number of hours for various pay periods that Plaintiff was seeking after her return from maternity leave.

44.     Samantha Ficklin immediately called the Plaintiff and said: "I heard you are leaving the company to go work for the VA hospital after your maternity leave"

45.     Plaintiff informed her that Plaintiff had not made any decision yet.

46.     Samantha Ficklin told Plaintiff that Plaintiff could not work for both the VA and the Defendant.

47.     Samantha Ficklin then told Plaintiff that Tim Rombach would like to pay Plaintiff for all Plaintiff's accumulated PTO immediately, so that Plaintiff could leave the Defendant prior to completing her maternity leave with the Defendant.

48.     Plaintiff said that she had not made any decision on leaving the Defendant and did not want her PTO paid out.

49.     Samantha then sent Plaintiff an email reminding Plaintiff that she had 16.45 hours of personal time remaining and if Plaintiff wanted to be paid for those personal hours she had to use them prior to Plaintiff's separation from the Defendant.

50.     On June 4, 2015, Plaintiff sent an email to Tim Rombach, stating that Plaintiff received an offer for a full time salaried pharmacist job with the Salt Lake City Veterans Affairs Hospital.

51.     Plaintiff stated that she would like to remain in the Defendant's system so that Plaintiff could pick up shifts when available.

52.     Plaintiff talked to Tim Rombach on the phone on June 16, 2015.  He used the same sentence Samantha Ficklin used: "I heard you are leaving the company to go work for the VA Hospital".

53.     Plaintiff told Tim Rombach that Plaintiff was not leaving the Defendant. Plaintiff told him that Plaintiff want to remain with the Defendant so that Plaintiff could pick up shifts when available the same way the Defendant kept and didn't remove other employees who took positions with other pharmacies, such as Devan Davis, Nathan Blackham, Leonard Sorensen, and many more.

54.     Tim Rombach informed the Plaintiff that he would not keep the Plaintiff in the Defendant's system to pick up shifts.

55.     The next day, Plaintiff contacted Tim Rombach's acting supervisor at the time, Anthony Chung about this issue.

56.     Plaintiff told Anthony Chung that Plaintiff wanted to remain in the Defendant's system to pick up shifts.

57.     Plaintiff requested the same status as the white male pharmacists, Devan Davis, Nathan Blackham, and Leonard Sorensen.

58.     On July 1, 2015. Plaintiff received an e-mail Tim Rombach saying that he was glad that Plaintiff decided to stay with the Defendant at 56 hours per 2 weeks.

59.     Tim Rombach e-mail was untruthful.  Plaintiff never said that she would remain with the Defendant on a 56 hours per 2 weeks shift.  Tim Romabach created the untruthful e-

mail to create the pretext for terminating Plaintiff after Plaintiff informed him that Plaintiff would be taking the salaried pharmacist position with the Salt Lake Veterans Affairs Hospital, but that the Plaintiff expected the same status as the white male pharmacists, Devan Davis, Nathan Blackham, and Leonard Sorensen.

60.     Tim Rombach then fabricated and sent Plaintiff phony schedules at 56 hours per 2 weeks. Those schedules were fabricated and phony because the schedules were duplicates of another pharmacist's schedules at store 5235.

61.     On July 3, 2015, Plaintiff sent Tim Rombach an email accusing him of discriminating against Plaintiff because Plaintiff was black. He never responded.

62.     On July 4, 2015, Plaintiff sent Tim Rombach an e-mail informing him that Plaintiff intended to take the position with the Salt Lake Veterans Affairs Hospital, but that Plaintiff wanted to remain with the Defendant part-time.

63.     On September 10, 2015, Plaintiff was terminated from the Defendant.

64.     On September 26, 2015, Plaintiff tried to log on to the Defendant's pharmacist workplace website, however Plaintiff's account was disabled.

65.     On September 29, 2015, Plaintiff sent an email to Tim Rombach's supervisor, the regional manager Davey Lavergne and the senior division director Paresh Patel, explaining the situation to them. Plaintiff's e-mail was forwarded to another new regional manager, Chad Luebke.

66.     At that point Plaintiff was put back in Walmart system because Plaintiff started receiving emails again from the Defendant as an employee.

8

67.     Plaintiff had a phone conversation with Chad Luebke on October 5, 2015. Plaintiff informed Chad Luebke about Tim's history of discriminating and retaliating against Plaintiff because of the Plaintiff's race and national origin.

68.     Chad Luebke asked Plaintiff if Plaintiff could commit to work 2 days per month for the Defendant. Plaintiff affirmed that Plaintiff would commit to work 2 days per month.

69.     Chad Luebke then told Plaintiff that he would talk to Tim Rombach and call me back.

70.     Chad Luebke called Plaintiff back on October 12, 2015 and told Plaintiff that Tim Rombach said to him that he had scheduled me 56 hours per 2 weeks post my maternity leave and Plaintiff was not available to work as a full time hourly at 56 hours per 2 weeks.

71.     Plaintiff was then again removed from the Defendant's system.

72.     Plaintiff filed an unperfected charge with the EEOC on March 8, 2016. Defendant was informed of the Plaintiff's charge on March 11, 2016.  Plaintiff subsequently perfected the charge on May 18, 2016.

## FIRST CAUSE OF ACTION
## DISCRIMINATION RACE

73.     The Plaintiff incorporates by reference paragraphs 1 through 72 above as if specifically set forth herein.

74.     Defendant targeted the Plaintiff for termination based on pretext.

75.     Defendant denied the Plaintiff equal opportunities for promotion.

76.     Defendant denied the Plaintiff, a black female, the same employment opportunities as similarly situated white male co-workers, specifically when white male

9

pharmacists took jobs at other pharmacies, they were permitted to pick up random shifts with the Defendant.  Defendant denied the Plaintiff this opportunity because of her race.

77. At all times herein material, the Defendant's actions were discriminatory and related to the Plaintiff's race in violation of Title VII.

78. The Defendant's actions constituted a discriminatory discharge of the Plaintiff in violation of her rights under Federal Title VII and Utah Antidiscrimination laws.

79. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has suffered loss of income to date, plus interest, in an amount uncertain to date, but in an amount to be demonstrated at trial.  The Plaintiff is entitled to back pay, and front pay, in an amount to be determined at trial.

80. As a further direct and proximate result of the Defendant's wrongful conduct, the Plaintiff suffered severe emotional distress and anguish all to her damage in the amount of $200,000.00, or such other amount as may be demonstrated at trial.

81. The Plaintiff is entitled to affirmative injunctive relief prohibiting the Defendant from discriminating against individuals in the future.

82. The acts of the Defendant were willful, wanton and in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to punitive damages in the amount of $200,000.00, or such other amount as may be demonstrated at trial.

83. The Plaintiff is entitled to reasonable attorney's fees and costs of court.

WHEREFORE, the Plaintiff prays for relief and judgment against the Defendant as more particularly set forth herein.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION NATIONAL ORIGIN**

84. The Plaintiff incorporates by reference paragraphs 1 through 83 above as if specifically set forth herein.

85. The Plaintiff is from Togo in West Africa.

86. Defendant targeted the Plaintiff for termination based on pretext.

87. Defendant denied the Plaintiff equal opportunities for promotion.

88. Defendant denied the Plaintiff, a black female from Togo, the same employment opportunities as similarly situated white male co-workers from America, specifically when white male American pharmacists took jobs at other pharmacies, they were permitted to pick up random shifts with the Defendant. Defendant denied the Plaintiff this opportunity because of her nationality.

89. At all times herein material, the Defendant's actions were discriminatory and related to the Plaintiff's nationality in violation of Title VII.

90. The Defendant's actions constituted a discriminatory discharge of the Plaintiff in violation of her rights under Federal Title VII and Utah Antidiscrimination laws.

91. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has suffered loss of income to date, plus interest, in an amount uncertain to date, but in an amount to be demonstrated at trial. The Plaintiff is entitled to back pay, and front pay, in an amount to be determined at trial.

92. As a further direct and proximate result of the Defendant's wrongful conduct, the Plaintiff suffered severe emotional distress and anguish all to her damage in the amount of $200,000.00, or such other amount as may be demonstrated at trial.

93.     The Plaintiff is entitled to affirmative injunctive relief prohibiting the Defendant from discriminating against individuals in the future.

94.     The acts of the Defendant were willful, wanton and in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to punitive damages in the amount of $200,000.00, or such other amount as may be demonstrated at trial.

95.     The Plaintiff is entitled to reasonable attorney's fees and costs of court.

## THIRD CAUSE OF ACTION
### RETALIATION

96.     The Plaintiff incorporates by reference paragraphs 1 through 95 above as if specifically set forth herein.

97.     The Plaintiff complained to the Defendant that Tim Rombach was discriminating against the Plaintiff.

98.     The Defendant failed to investigate the Plaintiff's complaints.

99.     Instead of investigating the Plaintiff's complaints, the Defendant ignored Tim Rombach's discriminatory behavior, thereby ratifying the behavior.

100.    The Defendant then terminated the Plaintiff in retaliation for the Plaintiff's exercise of her federally protected rights.

101.    The Defendant's actions were in retaliation for the Plaintiff exercising her rights under Federal laws.

102.    As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has suffered loss of income to date, plus interest, in an amount uncertain to date, but in an amount to be demonstrated at trial.  The Plaintiff is entitled to back pay, and front pay, in an amount to be determined at trial.

103.    As a further direct and proximate result of the Defendant's wrongful conduct, the Plaintiff suffered severe emotional distress and anguish, all to her damage in the amount of $200,000.00, or such other amount as may be demonstrated at trial.

104.    The Plaintiff is entitled to affirmative injunctive relief prohibiting the Defendant from discriminating against individuals in the future.

105.    The acts of the Defendant were willful, wanton and in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to punitive damages in the amount of $200,000.00, or such other amount as may be demonstrated at trial.

106.    The Plaintiff is entitled to reasonable attorney's fees and costs of court.

WHEREFORE, the Plaintiff prays for relief and judgment against the Defendant as more particularly set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for relief and judgment against the Defendant as follows:

1.    For back pay, plus interest thereon at the appropriate legal rate, and front pay, in an amount to be determined at trial.

2.    For general damages in the amount of $200,000.00, or such amount demonstrated at trial.

3.    For punitive damages in the amount of $200,000.00, or such amount demonstrated at trial.

4.    For injunctive relief prohibiting the Defendant from further violations

5.    For interest, costs of court and a reasonable attorney's fee.

6.      For such other and further relief as the Court may deem fitting and proper in the premises.

7.      Plaintiff requests that this matter be set for a jury trial.

DATED: May 19, 2023.


 _/s/Russell T. Monahan_____
RUSSELL T. MONAHAN
Attorney for Plaintiff


Plaintiff's Address:
P.O. Box 331
West Jordan UT  84084